Quincy Medical Center Incorporated v. Adler v. Gupta Good morning, your honors. May it please the court. My name is Leah Miraldi, and I'm here on behalf of the joint appellants Dr. Aparv Gupta and Victor Munger. At this time, I would like to reserve three minutes for rebuttal argument. Yes. Thank you, your honor. Your joint appellants, Dr. Gupta and Mr. Munger, respectfully request that this honorable court reverse the decision of the district court, finding that the bankruptcy court lacked subject matter jurisdiction over the disputes between Dr. Gupta and Mr. Munger and Stewart. First, the district court erred when it ignored the bankruptcy court's jurisdiction to interpret and enforce its own prior sale order. That sale order was entered as part of a core proceeding in the bankruptcy, and the bankruptcy court's interpretation of that order was also thus a core proceeding. Second, the district court erred as a matter of law when it assumed that the disputes between Dr. Gupta and Mr. Munger and Stewart were non-core proceedings and thus only engaged in a related-to analysis. Dr. Gupta and Mr. Munger submit that their disputes arose in the bankruptcy as that term is defined in case law in 28 U.S.C. 1334 and were thus core proceedings demanding an arising in analysis. And lastly, the district court erred when it failed to give credence to the retention of jurisdiction provisions included by the bankruptcy court in its sale order as well as in the asset purchase agreement entered into between the debtor and Stewart. To my first point, the bankruptcy court's established case law. When the bankruptcy court entered its sale order, it was acting under an express core proceeding under 157B2, and it entered that order as part of the underlying bankruptcy proceedings. A sale motion was filed in the bankruptcy by the debtor with the asset purchase agreement attached to it. Dr. Gupta and Mr. Munger claim that Stewart breached provision 9.1, among others, of the asset purchase agreement. When the debtor submitted the sale motion, it attached the asset purchase agreement and asked the bankruptcy court to approve the agreement and enter a sale order approving that agreement and approving the sale of assets from the debtor to Stewart. The bankruptcy did so. But counsel, isn't it, in terms of deciding what the rights of your client might be under that asset purchase agreement, everything that's relevant in terms of a document to deciding that dispute is found in the asset purchase agreement. Yes, the sale order incorporates it, but there's really no language in the sale order itself that a court would have to look at to decide what the rights of your client were with respect to Stewart. Everything that matters is in the asset purchase agreement. Isn't that true? Your Honor, we would submit that that is not entirely true. While the specific provisions regarding Stewart's obligation to provide employment to the appellants, the sale order itself has language which bound the appellants and Stewart in addition to the debtor. Paragraph 30 of the sale order reads that the terms and provision of the APA, together with the terms and condition of the sale order, shall be binding in all respects upon all entities, including without limitation, the debtor, including its employees, officers, and directors, as well as Stewart. So we submit the sale order not only incorporated and approved the terms of the asset purchase agreement, it expressly bound Stewart and the appellants to it and the asset purchase agreement. So we submit that our claims, while our specific breach of contract claims come from the asset purchase agreement, the asset purchase agreement and the sale order are one and the same. Well, but is that so? I mean, isn't it the case that the asset purchase agreement would be enforceable subject to one possible condition, which I think was not specified, but probably contemplated, and that is that it would be accepted by the bankruptcy court. So it's not that it had no independent legal significance until the bankruptcy court, in effect, said, I adopt it, do what you said you'd do. It is simply that it was subject, in practical terms, to a condition subsequent if the bankruptcy court had said, no, I won't buy the asset purchase agreement. And if that is so, then the rights of your clients depend on the original agreement, which, in fact, was never abrogated by the fulfillment of the possible condition subsequent. Isn't that the way it works? Well, we would submit that the asset purchase agreement wouldn't have been anything enforceable in any way without the bankruptcy being filed by the debtor and the sale order entering. I mean, the language in the asset purchase agreement provides that the purchaser or the seller may terminate the agreement in the event that the bankruptcy court doesn't enter a sale order. So if the asset purchase agreement- Okay, I mean, that's the condition subsequent, which was a little bit more subtle than I was making it out to be. But it didn't say, we don't have an agreement until the bankruptcy court says it's okay. It says, we have an agreement which can be abrogated if the bankruptcy court says it's not okay. Isn't that the structure? Yes, Your Honor. I believe that that's how it reads. But we would still submit that if you go with the argument that the asset purchase agreement was and could be enforced without the bankruptcy ever happening, so our client's rights only arise under the asset purchase agreement and really have nothing to do with the sale order, which is what Stewart argues. That's hypothetical. That's not what happened here. Here, the asset purchase agreement contemplates the bankruptcy. The entire process of the Chapter 11 and 363 sale happened in the bankruptcy proceedings. The rights of the appellants were provided for in the asset purchase agreement and then bound my client and Mr. Munger to the asset purchase agreement and the sale order of the bankruptcy. And this court- So counsel, it seems to me your argument is not so much that the bankruptcy court had to interpret the sale order of the bankruptcy court in the language in the sale order in order to determine what kind of contractual obligations Stewart had to your clients, but that it's almost kind of a but-for analysis if the district court, excuse me, if the bankruptcy court had not chosen to incorporate the asset purchase agreement in the sale order, there would be, there simply would be no, your clients would have no claim at all against Stewart. Isn't that really the argument you're making? It's a kind of, without the bankruptcy proceeding, there would be nothing to try to enforce, but there's no language in the sale order that you have to look at in order to decide what the obligations of the parties are to each other. Other than the reference to paragraph 30 that I read before, which expressly bounds the employees of the debtor, which include the appellants and Stewart specifically to it which admittedly our clients did not sign the asset purchase agreement, but reportedly bound by the sale order, the But wouldn't it be your position that, okay, it's just a, without the bankruptcy proceeding, there would be no basis for any claim against Stewart. That's good enough. I mean, that's another way of expressing sort of the arising in jurisdictional basis. Wouldn't that be your position? Your Honor, we submit that the arising in jurisdictional basis is present here because the bankruptcy court's core function was to enter the sale order in the bankruptcy proceeding which approved, considered and approved specifically the asset purchase agreement. And the District Court of Massachusetts in the INRI Education Resources Institute found that the bankruptcy court had a rising in jurisdiction in the exact same situation where there was a contract entered into that was adopted by the bankruptcy court and incorporated into a sale order and the questions arose under that contract and it was found that the bankruptcy court was exercising its rising in jurisdiction to interpret an order that incorporated an agreement because that order was entered into as part of the core proceeding. And the Supreme Court of the United States has held that interpretation of an order arising from another core proceeding is itself a core proceeding. So while it's nuanced in the sense that the asset purchase agreement and the sale order are two separate documents, we submit that they shouldn't be looked at as two separate documents. It's the order of the bankruptcy court that approved the sale which required Stewart to extend offers of employment to our clients and it did not. So it breached that obligation which was one of the obligations that the bankruptcy court approved as part of their obligations in the sale. So we would submit that yes, they're two separate documents but they are one and the same and the bankruptcy court was interpreting its prior order when it ruled in favor of our clients that Stewart Brecht breached the asset purchase agreement. Let's assume for the sake of argument here that the legal merits of the position that you are arguing is 50-50. It's right on the fence. What is the best argument for saying that this kind of contractual dispute should be determined in a bankruptcy court rather than in an ordinary state court? The bankruptcy court has specific powers to approve sales, in this case it was a 363 sale, and sales of assets and while those can happen outside of the bankruptcy, this specific situation, there were certain contingencies that required approval by the bankruptcy court. So the argument would be that, well actually, that the bankruptcy court was interpreting its own prior order and it clearly has the jurisdiction to do that. While we concede that the claim may be brought in state court under the asset purchase agreement itself, merely because 1334B provides that the bankruptcy court only has concurrent but not exclusive jurisdiction over claims arising in the bankruptcy, we don't concede or state that we cannot bring the claim in state court. But one of the, one of the things that the bankruptcy court one of the conditions of the sale was that the appellants among others would be offered employment and while there are many conditions of the sale, bankruptcy court approved that as part of its order in granting the sale of the assets and we just submit that that's a specific part of the order in the bankruptcy court's process to approve sales as the debtor and the purchasers set them out to be. I think we're getting too hypothetical if we say well what if this just happened outside of the bankruptcy. I think that that's asking the court to rule on something that didn't occur here. I believe here, you know, the bankruptcy court was interpreting its order which approved the asset purchase agreement and bound the appellants and steward to it specifically. So bankruptcy court has the power to rule on those things. Thank you, Your Honors. Good morning. May it please the court, I'm Jonathan Young here with my colleague Scott McGee and we represent the Appellee Steward. We believe the district court ruled correctly in vacating the orders entered by the bankruptcy court based on a lack of subject matter jurisdiction. We believe that's so because none of the elements of bankruptcy jurisdiction set forth in section 1334 of the judicial code are present and while I'll review those different elements, Your Honors, I'd like to jump right away to the point you left off with Ms. Moraldi, the appellants construe and enforce its own order because I think the thrust of the appellant's position rests on that argument and as a general proposition, it's not objectionable. We see courts construe and enforce their own orders all the time. The appellants cite to Justice Moraldi that they were not controlled directly with the effect of a 1986 bar order entered in the Johns Manville bankruptcy and certainly if a prior order has injunctive provisions or other decretal language requiring parties to take action, we can understand how it might be necessary in a dispute over those injunctions to go back and ask the court that issued them what they mean. What we're dealing with here, we submit as a horse of a completely different color. We do not agree that the sale order here incorporated the asset purchase agreement. We certainly acknowledge it referenced it. Well, it did more than reference it. I mean, while it may not have said that the provisions of the asset purchase agreement are hereby incorporated in a part of this order and can be enforced through contempt or otherwise, it did say that they're binding. So it was one of the questions here, what's the import of that statement in paragraph 30 of the sale order? Absolutely. And I believe, Chief Judge Howard, what we're talking about is how far the court that issued that order should go to address subsequent disputes about that document. And we submit the appropriate place to draw the line is the four corners of the order itself. What are the decretal provisions of the order? What are the actions the order requires the party to take? And you reference contempt. That's actually, I think, quite a relevant factor for determining where we're talking about really enforcing the prior order and where we're talking about subsequent disputes arising out of a transaction approved by that order. So let's say there's just a state court action to enforce the APA. Is it a proper defense to say we're not bound by the APA? And that can only be decided in state court or whatever the proper form is, but that the bankruptcy court judge wouldn't have the authority to decide that question? Well, I think there are certainly provisions of the sale order where there would be an argument you'd need to go back and have the bankruptcy judge resolve it. For example, there are provisions in the sale order transferring assets free and clear of liens, claims, and encumbrances. And we've seen in the case law cited by both parties that where you have a fight over whether a good title passed, where you have a fight over whether an injunction or a release bars the claim from going forward, you might well need to go back to the court that issued it. Okay. So can you argue in state court in the case that I posited, can you argue about what the term binding means? I don't believe that if it's an enforceable contract and it's being sued on in state court that the fact that a bankruptcy court approved it precludes the state court from reaching it. I think it's concurrent jurisdiction and I think... From reaching the question of what the bankruptcy court meant by using the phrase binding, the word binding. Well, my understanding of that provision, Chief Judge Howard, is that in connection with the implementation of the transaction approved by the bankruptcy court, which involves delivery of assets and recordation of various instruments and various regulatory approvals, that that provision, as is customary in bankruptcy sales, made clear that everybody on notice of the transaction would be bound by the determinations of the court in terms of that transaction actually being closed and implemented. But we do not concede it goes so far as to subject all future disputes over the 75 pages of terms, conditions, representations, and warranties contained in that agreement to bankruptcy court jurisdiction. And that's really where the appellant's position takes us. Their argument is that if the agreement under which their claims rest were approved by the bankruptcy court, by definition all future disputes under that agreement can be brought before the bankruptcy court. And if I might, I'd like to give a couple of examples of where that could lead. You know, this is a sale of substantially all the operating assets of the hospital in Quincy. To the extent there were assignment or assumption of leases, this argument could lead you to the notion that all future lease disputes go to the bankruptcy court. I can envision it. Well, there might be an instance like that where it would be appropriate for the bankruptcy court to abstain. Well, abstention is certainly one of the powers or decisions the court can make under Section 1334, but I don't think abstention eliminates the need to conduct the threshold jurisdictional inquiry of whether this claim should be heard in the bankruptcy court. And what we're really saying, Chief Judge Howard, is that it's an enormous expansion of bankruptcy court jurisdiction where they want to draw this line. It is not just the actions the bankruptcy court has to take to pass title to the assets and get the transaction closed and wind down the case. It's everything an operating business could end up disputing with its landlords, its licensors, its clients that somehow touches that agreement. And so what we're really suggesting then is you come back to the decretal language in the order and you look at what are the parties really fighting about. And if it's a situation like travelers where you can't proceed any further unless you can get around the bar order, that's one thing. But if what you have is essentially an argument, a state law argument under a contract to which actually the appellants are not even parties, it's a separate issue on the merits, we contend that that's so far removed from what the bankruptcy court was doing when it approved the transaction that it really is appropriate to resolve it in that way. And that's actually what's happening, Your Honors. These precise claims are in suit in the superior court in Middlesex County. They are virtually identical to the claims that are at issue in the proceedings below here. And so our argument, if successful, will not deprive these gentlemen of their day in court. There is a state court that has jurisdiction over these claims. The parties are at issue and the case will proceed should the district court's decision be affirmed. Can I ask you a question about paragraph 37? What is the difference between this case and a case in which a judge approves independently arrived at settlement agreement and then retains jurisdiction? Well, Your Honor, I think the differences in the case of the settlement agreement, presumably what the judge is approving and what the parties are resolving are the matters that were before the court in the first place. Most settlement agreements, in other words, focus on the resolution of the claims pled. An asset purchase agreement, by contrast, is a transfer of an operating business that has, again, 75 pages worth of text and all kinds of assets, operations and other actions going on. And an asset purchase agreement like the one before this court is a much, much broader set of operating issues and it's much, much further removed from the core functions the bankruptcy court took up when it considered the sale and when it approved the passage of title to those assets. Counsel, why doesn't it, I mean, you're focusing a lot on sort of what may happen after the bankruptcy court acts to enter a sale or approve the asset purchase agreement, but before the bankruptcy court got involved, it's clear from the terms of the asset purchase agreement that it contemplates that there will now be a bankruptcy proceeding and this asset purchase agreement will only take effect if the bankruptcy court acts to approve it. And so this asset or purchase agreement actually doesn't even come into play, it doesn't exist without the involvement of the bankruptcy court. Isn't there a fair amount of law for the proposition that in that scenario where the agreement at issue exists only because of the involvement and act of the bankruptcy court, that that suffices for the purpose of doing the arising in analysis? Your Honor, we read those cases perhaps a little differently. We think the law in the First Circuit and other circuits is that for a rising in jurisdiction to be present, the claims at issue can have no existence outside the bankruptcy court. And what I think your question is alluding to, Judge Lippes, and what our colleagues across the aisle are arguing is that a rising in jurisdiction is really, as you put it, a kind of but-for analysis. If there hadn't been a bankruptcy filing and if the conditions subsequent Justice Souter alluded to hadn't been disabled, we wouldn't be here. And the law as we understand it is really best set forth in the stow case out of the Third Circuit, which is that you look to the nature of the claims, not whether or not these were factually events that resulted in a bankruptcy filing, but we look at who's bringing the claims, what kind of claims are they, and are they claims that inevitably have to play out in a bankruptcy proceeding. But that wouldn't be the analysis I thought you said at the outset. That would not be the analysis if the bankruptcy court had used words like, I incorporate all the terms and conditions of the APA into this sale order. Well, if there had been an incorporation, it would certainly eliminate one of the arguments we're making, but I still think 1334 obliges us to consider whether or not it's within the court's prerogative and jurisdiction to reach those issues. And what we're saying, Chief Judge Howard, is that if there had been an incorporation and if the bankruptcy court had said, you know what, every landlord, every IP licensor, every account debtor or account creditor, I'll hear you. If it's something these guys said they were going to do in this asset purchase agreement, come on in. Now, the judge could have done that. That would then, I think, shift us to the question of was that sufficiently tied to what the judge was doing in his 363 sale process to be a permissible exercise of his jurisdiction. So what's the answer to that question that you just raised? The one I just raised? Yes. I think not. I mean, I think where you have to draw the line is bankruptcy courts have power to do a variety of key or core functions. And there's no doubt, I mean, we don't dispute a 363 sale hearing is a core proceeding. And to the extent there were a fight over title, to the extent there were a fight over release of liens, to the extent there were a fight over something that prevented that judge from approving this transaction and these parties closing it, we get it. That's core bankruptcy jurisdiction. What if it's a very simple one-page APA that's fully incorporated? Does that make a difference? Well, I think if it were a one-page APA, we'd be less likely to be before you today. But I think it totally depends on what's on that page. If what's on that page is really focused on transferring the assets, clearing the liens, doing all the things that check off the closing checklist, then I think it probably works. To the extent that, you know, to the extent that one page says, all right, you know – Use best efforts to get the appropriate environmental permit, like for a driveway cut or something. Are we getting too far afield now? Well, maybe one way to answer it, Chief Judge Howard, is I see a difference between items that tie into the closing and items that don't. So if getting those permits were a closing condition and everybody were sitting out in the hallway saying we can't get it done until we get the permits, I can see where a bankruptcy judge might be on reasonable footing addressing that as part of the approval process. But where you're dealing with – We have something in this case in terms of mind-reading bankruptcy judges. We know what the bankruptcy judge thought. Well, we do know what the bankruptcy judge thought after the fact. Yes. And I can't argue – I thought you'd catch me on that. I can't argue with that. All I can say, Chief Judge Howard, is that this analysis, we think, really turns on what power the judge has to hear the claims that were pled and asserted before him. And we think the claims our colleagues across the aisle are making are different in nature, far more removed from the sort of core close the transaction, sell the assets kind of issues that were the subject of the sale hearing. Can I ask you one more question? It's not a fair one. Have you thought through whether there would be any difference in the argument that you've made under arising under – arising in, I'm sorry, and the inherent authority of the bankruptcy court to enforce its own orders? Is it the same argument in this case? You know, it's funny you ask because that was the last thing I worked on before I stepped in here. And it's a very amorphous issue to me under the law. My understanding is you could have a court enter an order in connection with a core bankruptcy function. You know, judge could enter an order on a lease assumption or a sale hearing. You could have a judge enter an order in a related to proceeding, any number of related to proceedings dealing with any number of issues outside the core functions. I don't think this doctrine of construing your own order changes 1334. I don't think it changes the basic categories of arising in or related to. I think you've got to take the analysis of the order and fit it within the 1334 bucket you're arguing. So in this case they're arguing arising in and they're saying construe the order as part of the arising in. And I think we have to judge that based on how far removed their claims are from, you know, what actually was necessary to sell those assets. Ms. Moraldi, you've reserved some time. Thank you. Your Honors, I would just like to touch briefly on the point that my brother referenced as something important to the closing of the sales, such as a permit or something like that. It is in the record that the transfer of the debtor's employees, which include the appellants, to Steward and to have them employed was a key part of the transaction and was something negotiated between the debtor and Steward in the Asset Purchase Agreement, which was incorporated into the sale order. So we would submit that this specific dispute regarding the lack of offer of employment to our clients was a key part of the transaction which was required to be performed at closing. That's the specific provision of the Asset Purchase Agreement, Section 9.1, requires that at closing offers are made to employees of Quincy Medical Center. While the debtors aren't part of this appeal, they've submitted papers and testified before the Bankruptcy Court that that was an integral part of the agreement between Steward and Quincy Medical Center, that the employees that were staying on by choice would be offered employment. Did the Bankruptcy Court in making this decision, did it, I didn't look at it, but I don't remember this specific, did the Bankruptcy Court refer to any understandings that it had as a result of its involvement in the bankruptcy proceeding in resolving the dispute before it? You seem to be suggesting that the Bankruptcy Court had certain understandings about what would happen in the wake of its order that informed its understanding of the issues before it in this dispute. Is there anything in the Bankruptcy Court decision that speaks to that understanding the Bankruptcy Court derived from its prior involvement? I would state, Your Honor, that the Bankruptcy Court did an in-depth analysis of the specific terms of the Asset Purchase Agreement, which it approved and, you know, retained jurisdiction over to enforce and, you know, read those provisions as to Steward's obligations to offer employment. So I would submit that the Bankruptcy Court was recognizing that those were an integral part of the transaction between Quincy Medical Center and Steward in the sale of the assets, keeping the employees on. The Bankruptcy Court did specifically reference Paragraph 30 of its sale order and its decision when it decided to hear the disputes and rule in favor of the appellants, that the order bound the appellants and Steward to it, and thus that's where its jurisdiction to hear those disputes arose from. So I would submit that the Bankruptcy Court's, you know, review of the specific provisions of the Asset Purchase Agreement, which our claims arise under, did suggest that the Bankruptcy Court understood and there was lots of testimony before the Court that, at the time before the Court issued its decision, debtors counsel presented to the Court the importance of these and things like that before the Court. So, yes, I would submit that the Bankruptcy Court did have an understanding of the importance of those provisions. May I ask a follow-up question to that? If you are arguing, in effect, generally that the treatment of the employees was crucial or significant to the Bankruptcy Court's willingness to approve the APA, doesn't that, in a case like this, invite an inquiry into the merits of the claims of the particular employees, claims against Stewart? And the reason that that might be the case, if I remember correctly from the briefs, is that these two employees were not listed on the schedule of employees whom Stewart was going to be bound to. In fact, they were fired by the debtor prior to the filing for bankruptcy. So if we accept your general premise about the significance of employee treatment to the Bankruptcy Court, don't we also have to look into this merits issue as to whether these two employees would be entitled to some claim under the APA themselves? Yes, Your Honor, and I would submit that that's exactly what the Bankruptcy Court did, but if I may respectfully correct Your Honor, our clients were included on the list of employees. Oh, I thought they had been taken off because they were fired the day before the filing. Our clients, Your Honor, received letters from the debtor on October 7, 2011. The closing was on October 1. As of the date of the closing, our clients were employees of the debtor expecting to receive offers under the Asset Purchase Agreement, which is what the Bankruptcy Court recognized. Therefore, we respectfully request that you reverse the decision of the District Court. Thank you, Your Honors.